IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MULHOLLAND ENERGY SERVICES, LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. SA-24-CA-93-XR |
| KLAUS, INC., | § § | |
| *Defendant & Third-Party Plaintiff,* | § § § | |
| v. | § § | |
| ENBRIDGE PIPELINES, INC., CLEVELAND INTEGRITY SERVICES, LLC, AND CLERMONT INNOVATIVE DESIGN, LLC, | § § § § § | |
| *Third-Party Defendants.* | | |

## CLEVELAND INTEGRITY SERVICES, LLC'S MOTION TO DISMISS

Defendant and Third-Party Plaintiff Klaus, Inc.'s ("Klaus") suit against Cleveland Integrity Services, LLC ("CIS LLC") should be dismissed with prejudice because (1) CIS LLC was not in existence at the time of the events alleged in the Complaint, having been formed in 2023 to acquire certain assets out of the Cleveland Integrity Services, Inc. (the "Debtor" or "Cleveland Integrity") bankruptcy case;[1] (2) the sale order entered by the United States Bankruptcy Court for the Southern District of Texas in 2023 expressly provided for CIS LLC to acquire assets from the Debtor "free and clear" of legacy liabilities, such as those alleged to have occurred in the Complaint; and (3) the Complaint fails to state a claim for which relief could be granted against CIS LLC.

---

[1] As discussed further below, CIS LLC was created by a third-party lender for the specific and limited purpose of acquiring certain assets from the Debtor pursuant to a "free and clear" order of the bankruptcy court.

-1-

I.  QUESTIONS PRESENTED

1. Does Klaus state a claim for relief against CIS LLC when CIS LLC did not exist at the time of the allegations in the Complaint because it was formed January 25, 2023?

2. Can Klaus obtain relief against CIS LLC in light of a bankruptcy court sale order entered on March 10, 2023, expressly providing that CIS LLC's acquisition of assets from the Debtor was "free and clear" of all liens, claims, and encumbrances such as those alleged to have occurred before the entry of such sale order?

3. Does Klaus state a claim for relief against CIS LLC where Klaus fails to plead facts supporting proximate cause or damages caused by CIS LLC?

4. Should the Court deny Klaus leave to amend its claims against CIS LLC because any such amendment would be futile?

II.  FACTUAL BACKGROUND[2]

A. **Pilgrim Breached its Contract with Klaus and Klaus Abandoned the Project**

1. On December 14, 2021, Klaus was hired by Pilgrim Construction, LLC ("Pilgrim") under a *Subcontract Agreement* to provide electrical and instrumentation services to the Cushing Facility Project (the "Project") being constructed for Enbridge Pipelines, Inc. ("Enbridge"). Complaint ¶¶ 7, 8, 9.

2. Klaus' work on the Project was overseen by Clermont Innovative Design, L.L.C. ("Clermont Innovative"). Complaint ¶ 10.

3. As alleged in the Complaint, in early 2022, an entity that operated as Cleveland Integrity[3] (whose relationship to the Cushing Facility Project and the Subcontract Agreement is

---

[2] Unless otherwise noted, the following allegations are restated here as they are alleged in the Complaint. CIS LLC does not admit the accuracy of the allegations in the Complaint but restates them here for illustrative purposes pursuant to Rules 12(b) and 56(c) of the Federal Rules of Civil Procedure.

[3] As noted above and discussed further below, CIS LLC is not the same "Cleveland Integrity Services" related to the events in question. The Complaint refers to purported conduct of Cleveland Integrity Services Inc., which filed for chapter 11 relief in the Southern District of Texas as Case No. 23-90052. Accordingly, and because the Complaint must be treated as true at this stage of the proceedings, for purposes of the Factual Background, references to the Complaint shall refer to "Cleveland Integrity" rather than CIS LLC to avoid confusion.

not referenced in the Complaint) "unfairly spread[] a false narrative" that Klaus caused the Project to be delayed. Complaint ¶¶ 13, 31. This "false narrative" was apparently comprised of questions by the Project's Chief Inspector related to whether materials would be procured timely and whether the project was properly staffed. Complaint ¶¶ 15, 16, 17. The Chief Inspector refused to extend the in-service date after Klaus requested an extension because he wanted to complete the project on time. Complaint ¶ 19.

4. In early June 2022, Pilgrim refused to pay Klaus' invoices for work performed under the Subcontract Agreement. Complaint ¶ 25.

5. On or before August 2022, Klaus removed its crews from the Project and did not complete its obligations under the Subcontract Agreement. Complaint ¶¶ 26, 27, 28 (acknowledging that only "approximately 90%" of the work Klaus was contracted to perform was complete).

6. Pilgrim breached the Subcontract Agreement with Klaus. Complaint ¶ 31.

7. There is no allegation that any entity operating as Cleveland Integrity had a contractual relationship with Klaus. As alleged, it appears the only relationship between Klaus and Cleveland Integrity was through Yuran's role as Chief Inspector of the Project.

---

Similarly, the Complaint fails to reference Cleveland Integrity's relationship to the Project aside from Klaus' passing references to John Yuran ("Yuran"). Klaus alleges that Yuran who was "with" Cleveland Integrity provided Klaus information related to project bidding. Subsequently, Yuran served as the Chief Inspector of the Project. Complaint ¶ 7. Yuran "carried out instructions given to him by Frantz [Clermont Innovative's Project Manager] and Clermont Innovative, specifically, but not limited to those regarding Klaus." Complaint ¶ 14.

**B.     CIS LLC Did Not Exist at the Time of the Allegations in the Complaint**

8.    All relevant facts alleged in the Complaint occurred in 2022 or earlier.

9.    Defendant CIS LLC did not exist in 2021 or 2022, the time period of the events described in the Complaint.

10.   On January 25, 2023, approximately five months following Klaus' cessation of work on the Project, CIS Purchaser, LLC filed its Certificate of Formation with the Secretary of State in Delaware. Exhibit A at 2.

11.   On March 13, 2023, a Certificate of Amendment to Certificate of Formation of CIS Purchaser, LLC was filed with the Secretary of State in Delaware, amending the name of CIS Purchaser, LLC to Cleveland Integrity Services, LLC. Exhibit A at 4.

> CIS Purchaser LLC Acquired Certain Assets Free and Clear from Debtor Cleveland Integrity Services, Inc. in a Bankruptcy Court Approved Sale

12.   Shortly after its formation, CIS Purchaser, LLC, entered an asset purchase agreement (the "APA") wherein it acquired certain assets of Debtor Cleveland Integrity Services, Inc.[4] Those assets included the Debtor's Master Services Agreements with Enbridge (the "Enbridge MSAs"). *See* Ex. B at 32.

| Enbridge Energy Company, Inc. and Enbridge (U.S.) Inc. | Master Services Agreement - U.S. Field Inspection |
|---|---|
| Enbridge (U.S.) Inc. | Enbridge Contingent Labor Agreement |

13.   On March 10, 2023, the Bankruptcy Court for the Southern District of Texas approved the APA between Debtor CIS Purchaser, LLC (the "Sale Order").[5] Exhibit B. Pursuant

---

[4] While CIS LLC and the Debtor have similar names, they are different entities. CIS LLC was formed in January of 2023, well after the tine of the events referenced in the Complaint.

[5] The *Order (I) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (II) Approving the Debtors' Assumption and Assignment of Certain*

to the Sale Order, CIS Purchaser, LLC acquired certain assets of the Debtor identified in the APA—including the Enbridge MSAs—"free and clear of all claims, liens, interests, and encumbrances." Exhibit. B at 1 and ¶¶ 6, 8, 14.

14. On June 13, 2023, Cleveland Integrity changed its name to Old Co CIS, Inc. *See* Exhibit C. And, on December 4, 2023, Old Co CIS, Inc. filed a Certificate of Dissolution with the Secretary of State in Oklahoma. Exhibit D.

### III.   LEGAL STANDARDS

**A.   Rule 12(b)(6)**

15. To survive a motion to dismiss under Rule 12(b)(6), Klaus must assert a theory that could entitle it to relief. FED. R. CIV. P. 12(b)(6). In support of that theory, a complaint must allege "sufficient factual matter" that, taken as true, "state[s] a claim for relief [that] is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must establish more than a "sheer possibility that a defendant has acted unlawfully," and the court need not accept as true legal conclusions or conclusory factual allegations. *Id.* "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *U.S. ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 761 (S.D. Tex. 2010) (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)) (cleaned up).

16. In reviewing a Rule 12(b)(6) motion, the Court may consider "all well-pleaded facts as true" and can also consider documents referenced and incorporated in the Complaint and any facts for which judicial notice is appropriate. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th

---

*Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* Case No. 23-90052 (Bankr. S.D. Tex.), at Doc. No. 165 (March 10, 2023) (Exhibit B).

4861-5099-2321.7

Cir. 2011) (affirming judicial notice of publicly available documents containing matters of public record when resolving Rule 12(b)(6) motion). As described further below, judicial notice is appropriate for documents filed with the Secretary of State and court orders.

**B.      Summary Judgment**

17.     Generally, if a motion to dismiss references matters outside the pleading it is more properly considered as a motion for summary judgment. FED. R. CIV. P. 12(d). CIS LLC does not intend to convert this motion to one for summary judgment because the motions' exhibits are publicly recorded certificates of formation and dissolution and court orders. *American Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 791 (W.D. Tex. 2015) ("Moreover, by taking judicial notice of facts not subject to reasonable dispute, a Court does not convert a motion to dismiss into a motion for summary judgment.") (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)). Nevertheless, if the Court concludes this motion should be considered under Rule of Civil Procedure 56, CIS LLC would bear the burden to show there is no genuine issue of any material fact either by submitting evidence negating the existence of Klaus' claims or demonstrating that no evidence of an essential element exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

**IV.     ARGUMENT**

18.     CIS LLC cannot be liable to Klaus because it did not exist when Klaus alleges it was harmed in 2021–2022. *See* Complaint ¶¶ 9 (entering Subcontractor Agreement in 2021), 25 (Pilgrim stopped paying Klaus in June 2022 and Klaus left job site); *compare* Exhibit A.

19. Following CIS LLC's formation in January of 2023, it purchased certain assets, including the Enbridge MSAs, from Debtor under the supervision of the Bankruptcy Court pursuant to the Sale Order. Exhibit B. Under the Sale Order, CIS LLC acquired these assets "free and clear" of any claims. Exhibit B. Accordingly, the Court should dismiss Klaus' suit against CIS LLC. The Complaint also fails to state a claim for relief against CIS LLC because Klaus fails to plead facts supporting proximate cause or damages caused by CIS LLC.

20. The Court should further deny Klaus leave to amend its claims against CIS LLC because any suit against CIS LLC would be futile as CIS LLC is not responsible for any conduct occurring before its inception.

> **A.  Klaus fails to state a claim for relief against CIS LLC because CIS LLC did not exist at the time of the allegations in the Complaint**

21.  Klaus failed to state a claim against CIS LLC because CIS LLC did not exist at the time of the events in question. This is, perhaps, merely a misnomer problem and Klaus intended to sue Cleveland Integrity., the chapter 11 Debtor from whom CIS LLC purchased certain assets. But had Klaus done a minimal amount of due diligence, it would have discovered that CIS LLC was not formed until several months *after* the events alleged to have occurred in the Complaint.[6]

22. The Complaint addresses events that allegedly occurred between October 2021 (Complaint ¶ 7) and August 2022 (Complaint ¶ 28). Therefore, any claim Klaus may have should have been asserted against the Debtor prior to or during its bankruptcy case. As set forth above, the Debtor was the only Cleveland Integrity in existence at that time. The Debtor commenced a chapter 11 bankruptcy case in January 2023 and obtained authority from the Bankruptcy Court to

---

[6] As noted below, *see infra* Section IV.B, the similarly named Cleveland Integrity Services, Inc. is a former chapter 11 debtor that sold certain assets to CIS LLC. Cleveland Integrity Services, Inc. has since dissolved its corporate form. Exhibit D.

sell certain assets (including the Enbridge MSAs) to CIS LLC "free and clear" of its legacy liabilities, such as those alleged here by Klaus. *See generally* Sale Order, Exhibit B.

23. CIS LLC was not formed until **January 25, 2023**. Exhibit A.[7] Any statements, communication, or other conduct upon which Klaus intends to rely cannot be attributed to CIS LLC until it was formed—five months *after* the events alleged in the Complaint. Compare Complaint to Exhibit A. Accordingly, CIS LLC could not have committed any of the acts alleged in the Complaint and cannot be held liable for the Debtor's acts or omissions. Sale Order at 11 ¶ BB; 16 ¶ 6; 25 at ¶ 32.

---

[7] Courts may take judicial notice of matters of public record including certificates of formation to identify that companies are different entities and dates of formation. *See, e.g. Butler v. TFS Oilfield Servs., LLC*, No. SA-16-CV-1159-FB, 2017 WL 7052308, at *3 (W.D. Tex. May 17, 2017); *Gomez v. Niemann & Heyer, L.L.P.*, No. 1:16-cv-119, 2016 WL 3562148, at *15 (W.D. Tex. June 24, 2016) (analyzing history of cases within the Fifth Circuit taking judicial notice of Secretary of State filings and doing same); *NRT Texas LLC v. Wilbur*, No. 4:22-cv-2847, 2022 WL 18404989, at *2 (S.D. Tex. Dec. 15, 2022) (taking judicial notice of Secretary of State records) (internal citations omitted); *see also* Federal Rule of Evidence 201(b)(2).

4861-5099-2321.7



Exhibit A.

24. To the extent Klaus believes that CIS LLC should be held liable for the acts of any individuals, like Yuran, prior to its formation, Klaus is both legally and factually mistaken. Texas law is clear: an individual who acts on behalf of a non-existent business entity cannot be treated as an agent because the nominal principal is not in existence. *See, e.g., Maurice Pierce & Assoc., Inc. v. Computerage, Inc.*, 608 F. Supp. 173, 176 (N.D. Tex. 1985) (finding purported agent could not bind a corporation to a contract at a time when corporation did not exist and dismissing suit for lack of personal jurisdiction over corporation). Klaus' claims against CIS LLC must be dismissed because it did not exist in 2021-2022.

4861-5099-2321.7

**B.     Klaus fails state a claim for relief against CIS LLC because CIS LLC acquired its interest in the Project "free and clear" of all liens, claims, and encumbrances**

25.     CIS LLC acquired the Enbridge MSAs "free and clear" of all claims and cannot be held liable for the Debtor's obligations or conduct. *See* Exhibit B at p.39 (labeled as Exhibit 3 to the Sale Order). The APA under which CIS LLC acquired the Enbridge MSAs from Debtor was approved by the Bankruptcy Court's Sale Order. Exhibit B.[8] To the extent Klaus brings this suit to hold CIS LLC liable for the Debtor's pre-bankruptcy acts and omissions, Klaus' claims must be construed as a collateral attack on the Bankruptcy Court's Sale Order. Any such collateral attack is clearly barred and should be dismissed.

        i.     <u>CIS LLC acquired certain assets from Debtor Cleveland Integrity Services, Inc. free and clear of liabilities and debts</u>

26.     Pursuant to the APA, CIS LLC acquired the "Purchased Assets"—including the Enbridge MSAs associated with the Project—"**free and clear**." *See* Exhibit B at 56-68 (Section 2.1 of APA defining "Purchased Assets"); *see also* Sale Order at 1 ("free and clear of all claims, liens, interests, and encumbrances"), 12 ¶¶ EE, FF; 16 ¶ 6 ("the Purchased Assets will be transferred to the Purchaser free and clear of all encumbrances, claims, interests, and liens" and providing extensive list of examples of same that CIS LLC did not acquire). Further, both the Sale Order and APA expressly stated that CIS LLC did **not** acquire Cleveland Integrity Services, Inc.'s debts or liabilities. Sale Order at 11 ¶ BB ("The Purchaser will not assume or in any way be responsible for any obligation or liability of the Debtors and/or the Debtors' estates except as expressly provided in this Sale Order or the APA.").

---

[8] As with the Secretary of State records, the Court may take judicial notice of the pleadings, papers, and orders filed in other courts. *See, e.g., Vines v. City of Dallas, Tex.*, 851 F. Supp. 254, 259 (N.D. Tex. 1994); *see also* Federal Rule of Evidence 201(b)(2).

27. Moreover, successor liability theories are adequately addressed (and barred) by the Sale Order. Sale Order at 11 ¶ BB ("The Purchaser is not a successor to the Debtors or the Debtors' estates by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or *de facto* merger of Purchaser or the Debtors."); 16 ¶ 6 (". . . the Purchased Assets will be transferred to the Purchaser free and clear of all encumbrances, claims, interests, and liens including . . . derivative and vicarious liability, transferee liability, alter-ego, . . . including claims otherwise arising under doctrines of successor liability . . ."); 25 at ¶ 32.

28. Accordingly, Klaus cannot proceed against CIS LLC under any theories for any acts alleged to have taken place in 2021-2022, prior to CIS LLC's formation and the Debtor's bankruptcy filing.

      ii. <u>Klaus' attempts to hold CIS LLC responsible for Debtor Cleveland Integrity Services, Inc.'s liabilities are a collateral attack on the Sale Order and should be denied</u>

29. The Bankruptcy Court has already adjudicated CIS LLC's rights and obligations under the Sale Order, including the assets it acquired from Cleveland Integrity Services, Inc., and has retained jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of both the Sale Order and the APA. Sale Order at 29 ¶ 47. Nevertheless, instead of challenging the Sale Order when it was entered or seeking to reopen the bankruptcy case, Klaus has asserted causes of action against CIS LLC to impose Debtor's pre-bankruptcy and pre-sale liabilities on CIS LLC, the non-debtor purchaser.

30. To attempt to litigate the Sale Order in this suit is a collateral attack, or an attempt to circumvent an earlier ruling by filing a subsequent action. *See In re CDP Corp., Inc.*, 462 B.R. 615, 632 (Bankr. S.D. Miss. 2011). To the extent Klaus intends to challenge CIS LLC's rights and obligations under the Sale Order, the appropriate forum to do so is in the Bankruptcy Court in Houston, Texas, because a "bankruptcy court always retains jurisdiction to review and interpret its

own orders." *Rodriguez v. EMC Mortgage Corp. (In re Rodriquez)*, 252 F.3d 435 (5th Cir. 2001). The only appropriate venue to challenge the Sale Order is in the Southern District of Texas Bankruptcy Court as the court that entered the Sale Order in the first instance. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995); *see also Heck v. Humphrey*, 512 U.S. 477, 490 n.10 (1994) (acknowledging that "the principle barring collateral attacks" is "a longstanding and deeply rooted feature of both the common law and [the Supreme Court's] own jurisprudence"). If Klaus intends to attack the validity, intent, or operation of the Bankruptcy Court's Sale Order, this case should be transferred to the United States Bankruptcy Court for the Southern District of Texas.

  **C. Klaus fails to state a claim for relief against CIS LLC**

  31. Klaus asserts a tortious interference claim against CIS LLC.[9] More specifically, Klaus contends that due to CIS LLC "unfairly spreading a false narrative about Klaus being the reason for the delay" of the Cushing Facility Project, <u>Pilgrim</u> (Klaus' contractual counter-party) "breach[ed] the Subcontract Agreement." Complaint ¶ 31. As a result, Klaus seeks payment from CIS for <u>Pilgrim's</u> "non-payment for work performed under the Subcontract Agreement." *Id*. at ¶ 32. Klaus, however, fails to explain any theory under which CIS LLC would be responsible for Pilgrim's alleged breach of contract or its non-payment. *See generally* Complaint.

The elements of a tortious interference with an existing contract are:

(1) an existing contract subject to interference,
(2) a willful and intentional act of interference with the contract,
(3) that proximately caused the plaintiff's injury, and
(4) caused actual damages or loss.

---

[9] Klaus's complaint blends two separate business torts. Texas recognizes causes of action for tortious interference with a *prospective* business relationship and for tortious interference with an existing contract. Because Klaus seeks damages under the Subcontract Agreement, this motion focuses on tortious interference with an existing contract.

*See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77–78 (Tex. 2000) (citations omitted). Under either theory, Klaus fails to plead allegations that state a claim for relief against CIS LLC.

      i.      <u>The Complaint Does Not Allege Facts Supporting Elements 3 or 4 of Tortious Interference with an Existing Contract</u>

32.      The Complaint alleges no facts to satisfy the third element of a tortious interference with an existing contract claim because Klaus fails to allege facts supporting proximate cause. "In a tortious interference claim, a plaintiff must be able to show that the act of interference with the proximate cause of the damages suffered by it. This is the classic proximate cause test with the component elements of cause in fact and foreseeability." *Tex. Campaign for the Env. v. Partners Dewatering Int'l, LLC*, 485 S.W.3d 184, 197 (Tex. App.—Corpus Christi-Edinburg 2016, no pet.) (cleaned up). "In other words, proximate cause is that cause, unbroken by any new and independent cause, that produces injury and without which the injury would not have occurred." *Id*. To establish proximate cause for a tortious interference claim, a party must show that the defendant took an active part in persuading a party to a contract to breach it. *Amigo Broadcasting, LP v. Spanish Broadcasting System, Inc.*, 521 F.3d 472, 493 (5th Cir. 2008).

33.      There are no allegations to support Klaus' apparent theory that any <u>questions</u> by Yuran proximately caused Pilgrim to breach the Subcontract Agreement. Further, the Complaint is devoid of allegations that Cleveland Integrity, let alone CIS LLC, intended to induce Pilgrim to breach the Subcontract Agreement. Instead, Complaint offers alternative reasons Pilgrim may not have paid Klaus, including Klaus' removal of its crews from the Project. *See* Complaint ¶ 25. And Yuran actively assisted Klaus in securing the Subcontractor Agreement in the first instance. Complaint ¶¶ 7, 8.

34. Indeed, while a Complaint need not contain "detailed factual allegations" it must plead sufficient factual allegations beyond mere unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Here, the Complaint offers no more than conclusory allegations and inferences of "false narratives." Klaus does not identify any specific false statements, or to whom the false statements were conveyed, let alone that the false statements were sufficiently incriminating to induce Pilgrim to breach the Subcontract Agreement. At most, the Complaint identifies questions asked by Yuran, the Project's Chief Inspector, about whether Klaus could perform its contractual obligations in full and on time. As such, there are no allegations to support the proximate cause element of a tortious interference claim.

35. Similarly, Klaus cannot satisfy the fourth element of a tortious interference claim because it did not suffer damages proximately caused by CIS LLC. Instead, Klaus is seeking breach of contract damages for its alleged failure to receive 10% of its fees under the Subcontractor Agreement with Pilgrim. Klaus chose to abandon the job site and not finish the work. Complaint ¶¶ 25, 26. Nevertheless, Klaus is choosing not to seek its fees from Pilgrim but from CIS LLC and others who were not party to the contract. Complaint ¶¶ 31, 32. Moreover, as addressed above, there is no basis for Klaus to allege that CIS LLC owes it damages when CIS LLC did not exist until months after the Subcontract Agreement was breached by Pilgrim.

36. As a result, Klaus did not state a claim against CIS LLC for tortious interference with an existing contract upon which relief could be granted and the claim against CIS LLC should be dismissed.

## V. LEAVE TO AMEND SHOULD BE DENIED BECAUSE AMENDMENT IS FUTILE

37. A court may deny leave to amend where the amendment would be futile. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003). Leave to amend is not automatic, but "is within the sound discretion of the district court." *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003) (internal citations omitted). Courts typically afford leave to amend at least once, "unless it is clear that the defects are incurable[.]" *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000) (noting that "futility" means that an amended complaint "would fail to state a claim upon which relief could be granted").

38. Here, the Complaint's defects are incurable, and amendment would be futile. Even were Klaus to replead by adding fresh allegations addressing the Complaint's deficiencies addressed above, CIS LLC as the purchaser pursuant to the Bankruptcy Court's Sale Order, still cannot be liable to Klaus because it did not exist at the time of the acts in question. *See supra-*Section IV.B.

39. Likewise, CIS LLC's rights under the Enbridge MSAs were acquired "free and clear" under the Bankruptcy Court's Sale Order. *See supra* Sec. IV.B. To the extent Klaus believes it has a claim, it is against the Debtor, not CIS LLC.

40. Finally, Klaus' pleadings are clear: Pilgrim breached the Subcontractor Agreement and Klaus seeks payment subject to that agreement—Klaus' claims lie with Pilgrim. Nevertheless, Klaus inexplicably elected not to sue Pilgrim. Regardless of whether Klaus is permitted to amend the Complaint as it relates to other parties, Klaus should not be permitted to replead fresh allegations against CIS LLC, thereby forcing CIS LLC to continue to defend against claims arising before its inception.

## VI. CONCLUSION

The Court should dismiss all claims against Cleveland Integrity Services, LLC with prejudice because the Complaint fails to state a claim upon which relief could be granted. Additionally, the Court should deny leave to amend the Complaint because Klaus cannot assert claims against Cleveland Integrity Services, LLC which pre-date its formation and are clearly barred by the Bankruptcy Court's Sale Order.

Respectfully submitted,

GRAY REED

By: */s/ London England*
    JONATHAN HYMAN
    Texas Bar No. 24032455
    AARON KAUFMAN
    Texas Bar No. 24060067
    LONDON ENGLAND
    Texas Bar No. 24110313

1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jhyman@grayreed.com
       akaufman@grayreed.com
       lengland@grayreed.com

ATTORNEYS FOR CLEVELAND INTEGRITY SERVICES, LLC

4861-5099-2321.7

## **CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on May 30, 2024, a true and correct copy of the foregoing document was served upon Relator's counsel of record via the Court's ECF system.

                                        */s/ London England*
                                        LONDON ENGLAND

4861-5099-2321.7